UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-23408-CIV-WILLIAMS/REID

ADMIRAL'S PORT CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.

ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY AND ARCH SPECIALTY INSURANCE COMPANY MOTIONS TO DISMISS

This cause is before the Court on Defendant Endurance American Specialty Insurance Company's Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 12] and Defendant Arch Specialty Insurance Company's Amended Notice of Joinder with Endurance America Specialty Insurance Company's Motion to Dismiss [ECF No. 18] (collectively the "Motions to Dismiss"). These matters were referred to me by the Honorable Kathleen M. Williams for a Report and Recommendation. [ECF No. 24]. For the reasons addressed below, it is **RECOMMENDED** that the Motions to Dismiss be **DENIED**.

## BACKGROUND

This is an insurance contract dispute. Plaintiff, Admiral's Port Condominium Association, Inc. ("Plaintiff"), a Florida corporation, owns property located at 2801 NE 183rd Street, Aventura, Florida 33160 (the "subject property"). [ECF No. 1-1 at ¶ 7]. Plaintiff entered into separate contracts with four different insurance companies, the Defendants in this case, to insure the subject

1

property. [*Id.* at ¶ 9]. These four insurance companies are: (1) Endurance American Specialty Insurance Company ("Endurance"); (2) Arch Specialty Insurance Company ("Arch"); (3) James River Insurance Company ("James River"); and (4) Rockhill Insurance Company ("Rockhill"). [*Id.* at ¶¶ 3–6]. As part of these agreements Plaintiff "agreed to pay Defendants a premium, and Defendants agreed to issue property insurance policies insuring [the subject property]." [*Id.* at ¶ 9].

Rockhill issued the primary insurance policy and provides the first $10,000,000.00 in coverage under assigned policy number RCPPRU000186-00. [ECF No. 12-1]; *see also* ECF No. 1-1 at ¶ 14]. Endurance provides the first excess layer of insurance coverage for 10,000,000.00 in excess of $10,000,000.00, under assigned policy number ESP30000294900. [ECF No. 12-2]; *see also* ECF No. 1-1 at ¶ 11]. James River provides the second layer of excess coverage for $10,000,000.00 in excess of $20,000,000.00, under assigned policy number 00065733-4. [ECF No. 19 at 10]; *see also* ECF No. 1-1 at ¶ 13]. And lastly, Arch provides the third layer of excess coverage for $20,000,000.00 in excess of $30,000,000.00, under assigned policy number ESP7302129-02. [ECF No. 18-1]; *see also* ECF No. 1-1 at ¶ 142. All four insurance policies were effective from April 6, 2017, through April 6, 2018.

On September 10, 2017, the subject property sustained damage as a result of Hurricane Irma. [ECF No. 1-1 at ¶ 17]. Plaintiff avers that it "complied with all post-loss obligations within the policies including, but not limited to: (i) [providing] timely notice to Defendants of the Covered Loss; and (ii) protecting the [subject property] from further loss." [*Id.* at ¶ 18]. Instead of paying out for the loss under the insurance policies, Plaintiff contends "Defendants breached the terms of the insurance policies by failing to pay for the Covered Loss and further failing to establish reasonable proof that Defendants are not responsible for payment of the Covered Loss." [*Id.* at ¶

2

24]. Consequently, Plaintiff filed suit in Florida state court to enforce the terms of the insurance contracts and to recover "damages, plus prejudgment and post-judgment interest, reasonable attorneys' fees, [and] costs." [*Id.* at 7]. In the Amended Complaint, Plaintiff asserts that "[a]ll conditions precedent to the filing of this action have been complied with, met, or otherwise waived." [*Id.* at ¶ 26].

Defendants removed this action to Federal Court under diversity jurisdiction. [ECF No. 1]. In the Notice, Defendants acknowledged that Plaintiff had submitted a signed, sworn proof of loss along with its claim as Exhibit 2 to its Amended Complaint stating that the amount of damages claimed is $34,294,703.01. [ECF No. 1 at ¶ 14].

Endurance subsequently filed the instant Motion to Dismiss [ECF No. 12], which Arch joined [ECF No. 18]. Endurance and Arch (collectively the "Excess Coverage Defendants") argue that Plaintiff has failed to plead that it has exhausted its primary coverage, and therefore, their obligations under the excess coverage contracts were never triggered. *See generally* [ECF Nos. 12; 18].

The Endurance policy provides in pertinent part:

1. **INSURING AGREEMENT**

    The insurance provided by this policy will follow form and be subject to the same terms and conditions as the "primary policy" listed in the SCHEDULE OF PRIMARY POLICY(IES) ENDORSEMENT, except for the premium, the limits of liability, and to the extent that the terms, conditions, provisions, definitions, endorsements and exclusions of this policy differ from the "primary policy". In the event of conflict between this policy and the "primary policy", the terms, conditions, provisions, definitions, and exclusion of this policy shall control.

2. **DROP DOWN PROVISION**

    It is agreed that liability and any obligation under this policy shall attached to the "Company" only after the limits of the "underlying policies" (including any deductible(s) or self-insured retention) have been exhausted or have been held

> liable to pay in full. The "Company" shall then be held liable to pay only such additional amounts in excess of the limits of liability of the "underlying policies" and in no event shall such payments exceed the limit of liability or annual aggregate(s) as provided by this policy, and states on the Declarations Page under Item 3.

*See* [ECF No. 12-2 at 5].

Arch's policy includes similar language:

**A. INSURING AGREEMENT**

> We agree to indemnify you for an "insured loss" in excess of, and after, the "underlying insurance" have been paid or admitted liability for the full amount of their policy limits of liability. Except for the Limit/Participation provision, and the terms, conditions, definitions, exclusions and limitations contained in this policy, the coverage provided by this policy shall follow the terms, conditions, definitions, exclusions and limitations of the "controlling underlying insurance". It is agreed that any Exceptions to the "controlling underlying insurance" attached to the Physical Damage Schedule takes precedence in the event of any conflict with the "controlling underlying insurance". For this policy to apply, the "insured loss" must occur during the Policy Period of this policy as shown on the Declarations. We will not pay for any loss or damage if the cause of such loss or damage is already in progress at the date and time the Policy Period begins, or if later, the effective date when coverage is added.

**B. LIMIT/PARTICIPATION PROVISION**

> The Limit/Participation is shown on the Declarations, Schedule(s), forms or endorsements attached to this policy. Our Limit/Participation for an "insured loss" arising from any one "occurrence" is in excess of the sum of deductibles, self insured retentions and the limits of liability of the "underlying insurance". If this policy covers more than one location, the Limit/Participation provision shall to the total "insured loss" to all locations insured under this policy in any one "occurrence".

**F. POLICY CONDITIONS**

> **5. OTHER INSURANCE**
>
> > This insurance is excess over the insurance whether primary, excess, contingent or on any other basis except other insurance purchased specifically to apply either on a proportionate basis with this insurance or in excess of this insurance.

4

[ECF No. 18-1 at 23–25].

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To achieve this end, pleadings must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-harmed-me accusation." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (internal quotation marks and citation omitted), *abrogated on other grounds by Mohamed v. Palestinian Autho.*, 566 U.S. 449 (2012). Rather, the plausibility "standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). In reviewing a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

In considering a Motion to Dismiss, courts are limited to considering the complaint and attachments thereto, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.". *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

551 U.S. 308, 323 (2007). Further, although "[i]n the rule 12(b) motion-to-dismiss context, a judge generally may not consider materials outside of the four corners of a complaint … [a] court may consider a document that has been attached to a motion to dismiss, however, if it is central to the plaintiff's claims and its authenticity is not challenged." *Pouyeh v. Bascom Plamer Eye Inst.*, 613 F. App'x 802, 808 (11th Cir. 2015) (citing *Day v. Taylore*, 400 F.3d 1272, 1275–76 (11th Cir. 2005).

## **DISCUSSION**

The Excess Coverage Defendants argue that the Plaintiff's Complaint does not sufficiently allege that Plaintiff exhausted its primary insurance coverage such that the Excess Coverage Defendants' contractual obligations are triggered. *See generally* [ECF Nos. 12; 18].

The Excess Coverage Defendants correctly note that excess coverage insurance policies are not triggered until the primary policy is exhausted. "Primary [insurance] coverage exists where, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability." *Privilege Underwriters Reciprocal Exch. v. Hanover Ins. Grp.*, 304 F. Supp. 3d 1300, 1308 (S.D. Fla. 2018) (internal quotation marks and citation omitted). "Excess insurance, on the other hand, exists where, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." *Id.* (internal quotation marks and citation omitted); *see also Conley v. Fla. Fam. Ins. Co.*, No. 3:08cv495, 2010 WL 3385353, at *3 (N.D. Fla. Aug. 26, 2010) (noting that an "excess insurance policy does not come into effect until and unless the amount of damages exhausts the limits of the primary policy"). Generally, when there are primary and excess insurance coverages there is a "longstanding rule that each underlying policy must be exhausted before the next layer of excess [insurers are] required to contribute." *Royal Hosp. Corp. v. Underwriters at Lloyd's*, No. 3:18-CV-000102, 2019

6

WL 4228490, at *3 (S.D. Tex. Aug. 20, 2019), *report and recommendation adopted*, No. 3:18-CV-000102, 2019 WL 4225579 (S.D. Tex. Sept. 5, 2019).

Here, the Amended Complaint does not explicitly allege that Plaintiff has exhausted the primary insurance policy or any of the layers of the excess insurance. *See generally* [ECF No. 1-1]. The Excess Coverage Defendants assert that their obligations under the insurance policy contracts are not triggered until the primary policy, or the preceding layer of excess coverage, has been exhausted. *See generally* [ECF Nos. 12; 18]. So, Endurance contends as the provider of the first layer of excess coverage, Endurance has no obligations under the contract until the primary policy is exhausted. [ECF No. 12 at 7–8]. Similarly, as the provider of the third excess layer, Arch avers that its obligations under its contract would not be triggered until Plaintiff exhausted the primary policy, Endurance's first layer of excess coverage, and James River's second layer of excess coverage. *See generally* [ECF No. 18].

As such, the Excess Coverage Defendants posit that Plaintiff's claims against them fail because Plaintiff has not averred in the Amended Complaint that the conditions precedent triggering those obligations take place. Plaintiff rebuts by arguing a "reasonable inference of the Amended Complaint is that the breaches of the policies by Endurance and Arch necessarily implicated damages exhausting the lower layers of coverage and triggering the layers of coverage for which Endurance and Arch's policies provided coverage to Plaintiff." [ECF No. 21 at 4].

A review of the Amended Complaint and the attached exhibits, however, show that Plaintiff did meet its pleading burden under Federal Rule of Civil Procedure 9(c). Rule 9(c) provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). In the Amended Complaint Plaintiff provides that "[a]ll conditions precedent to the filing of this action have been complied

with, met, or otherwise waived." [ECF No. 1-1 at ¶ 26]. And, the Sworn Statement In Proof of Loss sets forth the amount claimed of $34,294,703.01, an amount in excess of the primary coverage. The Excess Coverage Defendants' arguments entirely rest on the contention that the necessary condition precedent triggering their contractual obligations—Plaintiff exhausting its primary policy limits—has not occurred. And while this may be (and certainly appears to be) a clear and unambiguous requirement of the insurance contracts, this Court is required to make all reasonable inferences in Plaintiff's favor. By pleading that it had satisfied all conditions precedent, under Rule 9(c) it can reasonably be inferred that Plaintiff exhausted the primary insurance policy, and the necessary excess layers to reach each named Defendant. So, with this understanding, and being mindful of the minimal requirement set forth in Rule 9(c) (which the Excess Coverage Defendants fail to cite), the Amended Complaint meets the requirements to survive the Motions to Dismiss. Consequently, whether Plaintiff has actually exhausted its primary policy limits is a fact issue properly addressed in discovery, and to be raised at a later juncture in this case.

This conclusion does not conflict with the cases the Excess Coverage Defendants cite. Plaintiff relies heavily on *Ironshore Indem., Inc. v. Banyon 1030-32, LLC*, No. 10-60285-CIV, 2010 WL 11601098, at *1 (S.D. Fla. May 28, 2010). This case is readily distinguishable. In *Ironshore*, the court *sua sponte* raised the issue of whether there was an actual case or controversy under Article III of the Constitution. *Id.* In concluding there was not, the court explained that the plaintiff, the issuer of an excess insurance policy for the defendant, requested the court provide a declaration that it owed no duty under the policy, as a preemptive measure. *Id.* Crucially, at that point, however, the plaintiff had not pled that there were any claims made against it under the excess coverage policy or "that the underlying coverage ha[d] been exhausted," such that the plaintiff would be required to pay out on the policy. *Id.* at *2. As such, the court concluded there

was a "lack of an actual case or controversy … [because] without a threat of future injury to [the plaintiff], the [c]ourt might very well be deciding purely hypothetical issues." *Id.* at *3.

Here, the case is brought by the policy holder, not the issuer. Second, and most importantly, Plaintiff is not requesting declaratory relief for some hypothetical and not-certain-to-occur future injury. Here, Plaintiff's property sustained damage during Hurricane Irma, and it has yet to receive compensation from its insurers. The injury has already happened and is ongoing, and therefore, there is a controversy demanding this Court's attention. Whether the Excess Coverage Defendants are obligated to pay under their relevant insurance contracts is the issue to be decided in this case.

Many of the other cases the Excess Coverage Defendants are also readily distinguishable. *See, e.g., Royal Hosp. Corp.*, 2019 WL 4228490, at *3 (S.D. Tex. Aug. 20, 2019) (recommending the excess insurance coverage defendants' motion for judgment on the pleadings be granted, partly because it was undisputed that the plaintiff *admitted* that it had yet to exhaust its primary policy coverage, and the defendants' obligations under the contract were not triggered until the limits of the primary policy had been fully paid); *Reesey*, 2013 WL 12086662, at *3 (explaining that under the facts alleged in the complaint, the excess insurance coverage defendant would never be required to pay out on its excess policy because the plaintiff's claimed damages were significantly lower than the maximum permitted in the primary insurance policy). Consequently, the Excess Coverage Defendants' Motions to Dismiss should be denied.

## **CONCLUSION**

For the foregoing reasons it is **RECOMMENDED** that Defendant Endurance American Specialty Insurance Company's Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 12]; and Defendant Arch Specialty Insurance Company's Amended Notice of Joinder with Endurance America Specialty Insurance Company's Motion to Dismiss [ECF No. 18] be **DENIED.**

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**SIGNED** this 15th day of March, 2023.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Kathleen M. Williams**; and

    **All Counsel of Record**